<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TOSHA E., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 21-11502 (SDW) <br><br> **OPINION** <br><br> July 15, 2022 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Tosha E.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Ricardy Damille's ("ALJ") denial of Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that the ALJ's factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by her first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

I.      **PROCEDURAL AND FACTUAL HISTORY**

   A.   **Procedural History**

Plaintiff filed for DIB and supplemental security income ("SSI") on September 1, 2015, alleging disability due to acute anxiety, post-traumatic stress disorder, osteoarthritis, spinal disease, and muscle spasms. (*See* D.E. 6 (Administrative Record ("R.") at 63–64, 79–80.) The state agency responsible for disability determinations denied Plaintiff's claim at the initial and reconsideration levels. (R. 99, 107.) Subsequently, Plaintiff requested a hearing before an ALJ. (R. 117.) Plaintiff received a hearing on November 7, 2017, at which Plaintiff, represented by counsel, testified. (R. 28–62, 131.) On January 29, 2018, ALJ Damille determined that Plaintiff was not disabled. (R. 9–22.) On November 21, 2018, the Appeals Council denied Plaintiff's request for review. (R. 1–6.) Plaintiff appealed to this Court and on April 20, 2020, the Honorable Claire C. Cecchi remanded Plaintiff's case "to the ALJ for meaningful consideration of Plaintiff's obesity and its potential impact on the severity of her other impairments and the ALJ's RFC determination." (R. 502–05.) On July 7, 2020, the Appeals Council remanded the case for a new hearing and consolidated it with subsequent disability claims filed by Plaintiff. (R. 496–97.) ALJ Damille conducted a second hearing by telephone on October 23, 2020, at which Plaintiff, represented by counsel, testified. (R. 451–93.) On January 22, 2021, the ALJ determined that Plaintiff was not disabled. (R. 433–44.) Plaintiff filed the instant appeal to this Court, and the parties completed timely briefing. (D.E. 12, 13.)

   B.   **Factual History**

Plaintiff is forty-eight years old and has a high school education. (R. 36.) She previously worked as a rehabilitation aide, which is skilled, medium exertional work, and as a security guard,

which is semi-skilled, light exertional work.  (R. 37–38, 54.)  The following is a summary of the relevant medical evidence in the record.[2]

In March 2015, Plaintiff visited Dein F. Rice, M.D., and complained of "[r]ight shoulder and mid[-] and lower[-]back pain[]."  (R. 365–66.)  She reported that she had fallen on ice weeks before.  (*Id.*)  An x-ray of her right should revealed "mild osteoarthritis at the acromioclavicular joint," while an x-ray of her thoracic spine showed "[o]steoarthritis without disc[-]space narrowing, fracture, or subluxation."  (R. 282–83.)

On August 24, 2015, Plaintiff went to a hospital emergency room and "complain[ed] of pain in the lower back, right index finger[,] and right arm . . . ."  (R. 312–14.)  The hospital physician prescribed medication and discharged Plaintiff.  (*Id.*)

On August 26, 2015, Dr. Rice examined Plaintiff again and found that she had a "[n]ormal range of motion" and gait, without swelling or tenderness.  (R. 351–53.)  Dr. Rice diagnosed her with anxiety and arthritis, and prescribed medication including Tylenol, Flexeril, and naproxen.

In January 2016, Plaintiff saw Justin Fernando, M.D., for back and shoulder pain.  (R. 338–39.)  At the time of the visit, Plaintiff weighed 208 pounds, having gained 48 pounds in roughly a year and a half.  (*Id.*)  Dr. Fernando noted that Plaintiff had normal range of motion, with no significant difference between the reflexes or muscle mass on either side.  (R. 339–40.)  However, he also noted that the "[s]traight leg[-]raising test amounted to about 30 degrees on her right, but twice as much in her left."  (R. 339.)  Plaintiff did not appear to be in "acute distress" as "[s]he walked on her heels, walked on her toes, and squatted fully and completely without any complaints of pain or discomfort in the joints of the lower extremities."  (*Id.*)  Dr. Fernando observed that

---

[2] This summary addresses the medical evidence pertaining to Plaintiff's physical impairments only.  While Plaintiff alleged mental impairments, as well, the discreet issues that Plaintiff appeals do not pertain to the mental impairments, thus rendering them irrelevant to the discussion.

Plaintiff "complained of sustained pain at the side of percussion," but "[t]he pain did resolve spontaneously while she was still being examined." (*Id.*) Dr. Fernando diagnosed Plaintiff with "[c]hronic pain in the spine cervical, thoracic, and lumbar," and "[p]ainful muscles in the right lower extremity . . . ." (R. 339–40.) He noted that "[i]f there is any systemic cause for [her] claims of pain that is much more so on her right than on the left[,] including muscle pain, it cannot be identified in this physical exam." (R. 340.)

In February 2016 Plaintiff returned to Dr. Dein and complained that she had decreased range of motion in her lumbar spine and lateral hips. (R. 344–47.) Dr. Dein diagnosed Plaintiff with "[b]orderline hyperlipidemia," arthritis, anxiety, and anemia, and prescribed additional medications to help manage pain. (R. 345–46.)

In March 2016, pain-management specialist Michael A. Lepis, M.D., examined Plaintiff and found that she had "pain on deep palpation over the lower lumbar segments," but there was "no clonus at her ankles and no spasticity in the lower limbs." (R. 349–50.) Dr. Lepis observed that Plaintiff's neck and back pain were "possibly discogenic in etiology," and she had "a significant history of right shoulder pain with associated osteoarthritis." (R. 350.) Dr. Lepis prescribed Medrol anti-inflammatory medication to Plaintiff, recommended that she "obtain x-rays and MRI [imaging] of her cervical and lumbar spine," and advised her to attend physical therapy sessions. (*Id.*) In June and July 2016, Dr. Lepis gave Plaintiff "transforaminal epidural injections," which provided "significant improvement in her overall pain." (R. 398.) Dr. Lepis noted that Plaintiff did not require medication at that time, and advised her to continue physical therapy sessions. (*Id.*)

In January 2017, Plaintiff returned to Dr. Lepis to address "severe pain that appear[ed] to be emanating from her right sacroiliac joint." (R. 393.) She had "right buttock pain . . . radiating

4

to her knee," and "had no relief from her second epidural injection." (*Id.*) Dr. Lepis prescribed anti-inflammatory medication and scheduled another injection, which Plaintiff had in March 2017. (R. 390, 393.)

Plaintiff returned to Dr. Lepis in August 2017 and complained of additional severe back and leg pain. (R. 389.) A subsequent MRI of her lumbar spine in September 2017 showed "a circumferential disc bulge, likely with a small[,] superimposed central herniation" at L4/5, with "mild tricompartmental stenosis" and "mild abutment of the exiting right L5 nerve root." (R. 416.) The MRI showed "[n]o significant neuroforaminal stenosis" and "[m]ultilevel degenerative arthropathy." (R. 417.) The record did not reflect additional medical treatment from September 2017 until May 2019. (*See generally* D.E. 6.)

Between May 2019 and August 2019, Plaintiff saw a new primary care physician, Ramesh Patel, M.D., and complained of neck pain and stiffness. (R. 674.) During that visit and subsequent visits Dr. Patel observed that Plaintiff presented with normal musculoskeletal functionality, "[n]ormal strength in all muscle groups," "[n]ormal range of motion of all joints," and "[n]o joint effusions." (R. 662–63, 670–71, 674, 676–77.)

In October 2019, Plaintiff went to Suzanne Zemel, M.D., who noted tenderness in Plaintiff's thoracic and lumbar spine, as well as full range of motion with pain and antalgic gait. (R. 747–48.) At the time of the examination, Plaintiff weighed 176 pounds. (R. 747–48.)

    **C.  Hearing Testimony**

At the initial administrative hearing on November 7, 2017, Plaintiff was represented by counsel. (R. 30.) Plaintiff testified that she had pain in her right hip, leg, back, shoulder and hands that caused difficulty with prolonged standing and sitting. (*See* R. 38–39, 44, 50–51.) She also

testified that the pain in her arm and shoulder caused challenges when performing repetitive motions with her hands for more than forty-five minutes. (*See* R. 40–42.)

Jackie Wilson, a vocational expert, ("VE Wilson"), also appeared and testified that Plaintiff's past relevant work included positions as a rehabilitation aide and a security guard. (R. 54.) These positions are classified as medium and light exertion, respectively. (R. 54.) VE Wilson opined that Plaintiff would be unable to perform this past relevant work. (R. 55.) VE Wilson then considered Plaintiff's limitations and testified that jobs are available to Plaintiff in the labor market including light exertion positions such as photocopying machine operator or sealing and cancelling machine operator, or sedentary positions such as table worker, document preparer, or final assembler. (R. 55–56.)

After the matter was remanded, ALJ Damille held a subsequent telephonic hearing on October 23, 2020, at which Plaintiff was again represented by counsel, to further explore how Plaintiff's obesity may factor into the analysis of her other impairments. (R. 453–93.) Plaintiff testified that as a result of steroids, at one point she weighed close to 200 pounds, but at the time of the hearing she weighed closer to 170 pounds. (R. 462–63.) Plaintiff explained that her weight "wasn't a major problem . . . . [Her] spine i[s] the major thing" that caused the "majority of [her] pain." (R. 463.) She noted that "[h]aving gained . . . 25 or 30 pounds . . . didn't help it, but it was not the prime reason why [she] couldn't make movements and do what [she] needed to do, or get around, . . . ." (*Id.*)

Vocational Expert Jay Steinbrenner ("VE Steinbrenner") appeared and confirmed that Plaintiff was unable to perform her past work. (R. 472–74.) VE Steinbrenner testified that Plaintiff could perform sedentary positions, such as a table worker, bonder of semiconductors, or surveillance systems monitor. (R. 474–76.)

6

## II.     LEGAL STANDARD

### A.     Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted).  Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'"  *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision."  *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360).  This Court is required to give substantial weight and deference to the ALJ's findings.  *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008).  Nonetheless, "where there is conflicting evidence, the ALJ must explain which

7

evidence he [or she] accepts and which he [or she] rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

### B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. A claimant will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the claimant "not only unable to do his [or her] previous work but [unable], considering his [or her] age, education, and work experience, [to] engage in any kind of substantial gainful work [that] exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step, sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that a claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1571–76, 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant

is not disabled for purposes of receiving social security benefits, regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on the claimant's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). RFC is the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis, where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. <u>DISCUSSION</u>

#### A. The ALJ's Decision

On January 22, 2021, ALJ Damille issued a decision concluding that Plaintiff was not disabled from July 18, 2014, through the date of the decision. (R. 430–44.) At step one, the court

found that Plaintiff had "not engaged in [SGA]" throughout the aforementioned time period. (R. 436.)

At step two, the court found that Plaintiff "had the following severe impairments: osteoarthritis in the thoracic spine and right shoulder; degenerative changes in the cervical and lumbar region; obesity; anxiety; and post-traumatic stress disorder (PTSD)." (*Id.*)

At step three, ALJ Damille concluded that Plaintiff did "not have an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairments." (*Id.*) The court specifically considered Listings 1.02 and 1.04 and found Plaintiff did not meet or equal their requirements because "the record does not document involvement of one major weight-bearing joint . . . , resulting in inability to ambulate effectively[,] []or involvement of one major peripheral joint in each upper extremity . . . , resulting in inability to perform fine and gross movements effectively." (R. 436 (*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 1.02, 1.04).)

Additionally, the ALJ determined that "[t]he severity of [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.04 [Affective Disorders] and 12.06 [Anxiety Related Disorders]." (R. 436 (*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06).) ALJ Damille found that Plaintiff did not meet the "Paragraph B" criteria of either Listing, because Plaintiff only has mild limitations in her ability to "understand[], remember[], or apply[] information"; moderate limitations in her ability to "interact[] with others," "concentrate[], persist[], maintain[] pace"; and mild limitations in her ability to "adapt[] or manage[] [her]self," meaning Plaintiff's "mental impairments do not cause at least two 'marked' limitations." (R. 436–37.) In making these findings, the court considered Plaintiff's ability to "perform simple maintenance, prepare meals, go to doctor's appointments,

11

shop, [and] drive"; her ability to "get along with others, shop, spend time with friends and family, deal appropriately with authority, and live with her daughter and a friend"; and her ability to "go[] to the movies, beaches, shows, and dinners with others," among other abilities.  (R. 437.)  The court found, in addition, that Plaintiff does not satisfy "Paragraph C" criteria as required for these Listings.  (R. 438.)

ALJ Damille also considered Plaintiff's obesity, according to SSR 19-2p.  (R. 436.)  Obesity is not a listing, but alone or in combination with another impairment it may medically equal a listing.  SSR 19-2p.  Here, "even when obesity is considered in combination with [Plaintiff's] other impairments, [she] does not meet or equal any of the listings . . . ."  (R. 436.)

In assessing Plaintiff's RFC, the court analyzed the medical evidence in the record in exhaustive detail and found that Plaintiff

> [can] perform sedentary work . . .  except she can occasionally push and or pull with the lower extremities.  She can occasionally push and or pull with right upper extremity, which is the dominant.  She can occasionally climb ramps and stairs but never climb ladders, ropes[,] and scaffolds.  She can occasionally balance, stoop, crouch, kneel but never crawl.  She must be afforded the option to alternate from sitting to standing so long as she is not off task for more than 5% of the work[]day above normal breaks.  She can frequently handle with the hands.  She can understand, remember[,] and carry out simple instructions.  She is restricted to work involving few if any work[]place changes and occasional decision making.  She can have occasional interaction with supervisors, coworkers[,] and the public.

(R. 438 (citing 20 C.F.R. 404.1567(a) and 416.967(a)).)  At step four, the court also found that given Plaintiff's RFC she was unable to perform her past work as a rehabilitation aide or a security guard.  (R. 442.)

Finally, at step five, ALJ Damille considered VE Steinbrenner's testimony, noted Plaintiff's limitations, and contemplated Plaintiff's "age, education, work experience, and [RFC]."

12

(R. 443.) The court determined that Plaintiff was "capable of making a successful adjustment to other work," and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (R. 442–44.) Consequently, the ALJ concluded that Plaintiff was not disabled during the relevant period. (R. 444.)

    **B.**    **Analysis**

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision. (*See* D.E. 12 at 5, 8, 23.) Plaintiff asserts that the ALJ did not meaningfully consider Plaintiff's obesity in the RFC determination. (*See id.* at 9–17.) Plaintiff also contends that the RFC is not based on substantial evidence. (*See id.* at 17–23.) The Court considers the arguments in turn and finds each unpersuasive.

First, Plaintiff argues that ALJ Damille did not adequately address Plaintiff's obesity in determining the RFC. (*See id.* at 9–17.) Specifically, Plaintiff contends that the ALJ failed to follow the remand order, and that the failure to sufficiently consider the impact of Plaintiff's obesity on the RFC is a legal error that warrants reversal. (*Id.* at 9–14.) Plaintiff further argues that while "[t]he second, post-remand decision does mention obesity," the ALJ's finding that Plaintiff's obesity did not meet or equal a listing was conclusory. (*Id.* at 11.) Plaintiff additionally alleges that SSR 19-2p is the wrong rule to apply in this case, since Plaintiff filed for benefits in September 2015 and received an initial decision from the ALJ in January 2018, before the effective date of SSR 19-2p, May 20, 2019. (*Id.* at 11 n.4.) Plaintiff alleges that the remand order requires the subsequent rulings in this case to be decided under the prior rule regarding obesity, SSR 02-1p. (*Id.*)

Plaintiff's arguments are unavailing. First, Plaintiff is mistaken about the applicability of SSR 19-2p to this case. SSR 19-2p rescinded and replaced SSR 02-1p, and specifically provides

13

that when a court remands a "final decision . . . for further administrative proceedings after the applicable date of [SSR 19-2p]" the rule will apply "to the entire period at issue in the decision [made] after the court's remand." SSR 19-2p.  Furthermore, Plaintiff is correct that the remand order instructs the ALJ to "apply the prior rules . . . pursuant to HALLEX I-5-3-30," ("Hallex"), on remand, but Hallex pertains to the evaluation of medical evidence—not to the evaluation of Plaintiff's obesity.  (R. 496; HALLEX I-5-3-30.)  Accordingly, the ALJ properly applied SSR 19-2p to this matter.

SSR 19-2p provides that obesity is evaluated case by case "based on information in the case record," and "[o]besity, in combination with other impairment(s) may or may not increase the severity or functional limitations of the other impairment(s)." SSR 19-2p.  It is a claimant's burden to establish not only that "obesity *can* impair [his or her] ability to perform basic work activities," but to "specify[] *how* [his or] her obesity . . . affected [his or] her ability to perform basic work activities." *Carter v. Comm'r of Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020).  In fact, when an "ALJ state[s] that he [or she] considered the impairments in combination . . . it is [the p]laintiff who bears the burden of proof on appeal that the ALJ erred and that the error prejudiced him [or her]." *Farmer v. Comm'r of Soc. Sec.*, No. 19-13437, WL 6620152, at *3 (D.N.J. November 12, 2020) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

Here, Plaintiff's own words provide sufficient evidence that her obesity does not limit her ability to perform basic work activities.  At her second hearing with ALJ Damille, Plaintiff explained that her weight "wasn't a major problem . . . . [Her] spine i[s] the major thing" that caused the "majority of [her] pain." (R. 463.)  She added that her weight "was not the prime reason why [she] couldn't make movements and do what [she] needed to do, or get around, . . . ." (*Id.*)  Not only did Plaintiff confirm that obesity was not a major obstacle in her ability to

14

function, but the medical record is void of any evidence demonstrating otherwise. Furthermore, contrary to Plaintiff's allegations, the ALJ did discuss her lumbar spinal stenosis, degenerative arthropathy, and L5 nerve-root compression, and considered them when determining if and how her obesity impacted the listings. (*See* R. 440.) There was no indication from any medical source or opinion that Plaintiff had limitations due to her obesity. (*See generally* D.E. 6.)

Second, Plaintiff argues that her "RFC is not based on substantial evidence." (D.E. 12 at 17.) In particular, Plaintiff takes issue with the ALJ's determination that she is capable of sedentary work, and contends that this finding is not supported by substantial evidence because the ALJ did not assess Plaintiff's ability to sit, stand, walk, lift, or carry during an eight-hour day in his decision. (*See id.* at 22–23.) Plaintiff contends that a "function-by-function analysis," as required by SSR 96-8p, is necessary for a proper evaluation. (*Id.*)

"[T]here is no format to which an ALJ must adhere when giving h[is] reasoning so long as 'there is sufficient development of the record and explanation of findings to permit meaningful review.'" *Tompkins v. Astrue*, Civ No. 12-1897, 2013 WL 1966059, at *13 (D.N.J. May 10, 2013) (citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). An ALJ must "sufficiently address[] the medical evidence," but the ALJ is not required to address "every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 App'x 130, 133 (3d Cir. 2004).

Here, the ALJ supported his finding of sedentary work with evidence and explained his rationale for the finding in detail. The court based the RFC finding on "objective medical evidence, opinion evidence, and testimony . . . ," and provided detailed analyses of Plaintiff's medical impairments. (R. 442.) After the ALJ specifically analyzed the medical records, he noted that while Plaintiff "testified that she suffer[ed] from symptoms of osteoarthritis," among other ailments, the medical images did "not show significant abnormalities" in Plaintiff's

15

musculoskeletal symptoms, doctors recommended "conservative treatment," and she "retain[ed] full muscle strength of her extremities." (*Id.*) Plaintiff's testimony further indicated she was able to perform every-day activities. (*Id.*) The court also noted that "[t]reatment notes in 2016 classified obesity as 'probable[,]' with no clear indication of a causal link between her weight and pain"; thus Plaintiff's obesity was not "a significant contributor to her musculoskeletal ailments." (*Id.*) The court found that the objective evidence reflects that Plaintiff has full range of motion and normal strength, despite tenderness in her thoracic and lumbar spine. (*See* R. 439–40.) Furthermore, the court limited the finding that Plaintiff could perform sedentary work by adding that she "must be afforded the option to alternate from sitting to standing . . . ." (R. 438.) In sum, the court fully articulated why he found Plaintiff capable of sedentary work and based his finding on medical evidence in the record, as required by SSR 96-8p.

Consequently, the ALJ's decision is supported by substantial evidence. This Court will therefore affirm.

### IV. CONCLUSION

For the foregoing reasons, this Court finds that ALJ Damille's factual findings were supported by substantial credible evidence in the record and the legal determinations were correct. The Commissioner's determination is therefore **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*  
**SUSAN D. WIGENTON**  
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk  
cc: Parties